**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>ROBERT CLARY,</td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Case No.: PWG 8:20-cv-02521</td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>BLAISE RAVILLE, <i>et al.</i>,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Robert Clary, through counsel, filed suit against his employer, Paragon Systems, Inc. ("Paragon"), and supervisors and other employees at Paragon, alleging interference with his rights under the Family and Medical Leave Act of 1993, 29 U.S.C. 2615(a)(1) ("FMLA"), and retaliation in violation of the FMLA. Pending is Defendants' Motion to Dismiss (ECF No. 13). I have reviewed the filings[1] and find a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, the Defendants' Motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND[2]**

Robert Clary was employed by Paragon as a security guard from February 2014 to January 2016. Compl. ¶ 3, ECF No. 1. After a brief hiatus, Mr. Clary returned to working at Paragon in June 2016 until his termination in August of 2017. *Id.*

---

[1]     Mot. Mem., ECF No. 13-1; Resp. ECF No. 14; Reply, ECF No. 15
[2]     For purposes of considering a motion to dismiss, this Court accepts the facts that Plaintiff alleged in his Complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011).

During all relevant periods of time, Mr. Clary reported directly to Lieutenant Michael Bethea, who reported to Captain Michael Washington, who reported to Blaise Raville, the Project Manager. *Id*. at ¶ 13.

Mr. Raville supervised the operations at Mr. Clary's job location. *Id*. at ¶ 4. Mr. Clary alleges that Mr. Raville "had ultimate responsibility for enforcing Paragon's policies and procedures, and for hiring and firing the security personnel, and for decisions concerning the employees at the location." *Id*. Mr. Raville's administrative assistant was Nicole Denton. *Id*. at ¶ 5. Ms. Denton was responsible for "provid[ing] secretarial and clerical support to Raville and the other supervisors responsible for the day-to-day operation of the security force at Mr. Clary's work site, including receiving, memorializing, and forwarding information related to employee absences, FMLA requests, and terminations to Paragon's Human Resource Department." *Id*.

Paragon's Human Resource Department is led by Bryttany Gardner, to whom Kameka Jernigan reports. *Id*. at ¶ 21, 28. Plaintiff alleges in the complaint that Ms. Gardner was the Employee Relations Supervisor while Ms. Jernigan was an "HR Generalist" at all relevant times. *Id*. at ¶ 21.

Starting in 2016, Mr. Clary's 83-year-old father was a resident at an inpatient nursing home in South Carolina. *Id*. at ¶ 16. Mr. Clary's mother expressed concerned to Mr. Clary about his father's physical health, mental health, and the adequacy of the care his father was receiving from the nursing home. *Id*. at ¶ 15. Thus, Mr. Clary alleges that his mother began depending on him to assist with his father's care. *Id*. at ¶ 18.

On July 21, 2017, Mr. Clary alleges that he emailed Capt. Washington and Ms. Denton to request FMLA application forms seeking leave for the care of his father. *Id*. at ¶ 20. On July 24, 2017, Ms. Jernigan notified Mr. Clary that he was eligible to receive FMLA leave but reminded

him that he needed to provide a medical certification from his father's health care provider. *Id*. at ¶ 21. Ms. Jernigan also included a notice summarizing Mr. Clary's rights and responsibilities with the certification form and explained that Paragon would review the request and then make a final determination. *Id*.

On July 27, 2017, Mr. Clary returned the completed certification form. *Id*. at ¶ 22. On July 28, 2017, Paragon approved Mr. Clary's request for leave. *Id*. at ¶ 23. This request was specifically approved for leave on an intermittent basis, and Mr. Clary was required to provide notice of his father's appointments as far in advance as possible and follow Paragon policy regarding calling out. *Id*.

On August 15, 2017, Mr. Clary was informed by his mother that his father required a visit to the dentist "as soon as possible." *Id*. at ¶ 24, 25. Two days later on August 17, 2017, Mr. Clary notified Sergeant Bruce McKittrick that he would need to take FMLA leave from August 22, 2017, to September 19, 2017. *Id*. at ¶ 26. On August 20, 2017, Mr. Clary claims that he called to confirm that his leave request had been sent to Human Resources. *Id*. at ¶ 27. Sgt. McKittrick sent an email to Capt. Washington and Mr. Raville informing them of Mr. Clary's leave request. *Id*.

On August 21, 2017, Mr. Clary alleges that he received a follow-up call from Ms. Jernigan and Ms. Gardner to discuss his leave request. *Id*. at ¶ 28. Mr. Clary claimed to be driving at the time and therefore was unable to speak with them, but claims he tried to call them back twenty minutes later and was unable to connect with them. *Id*. The following day, Mr. Clary claims he made several additional attempts to reach Ms. Jernigan and Ms. Gardner. *Id*. at ¶ 29.

Finally, on August 23, 2017, Mr. Clary and Ms. Jernigan were able to connect, and Ms. Jernigan informed Mr. Clary that he had only been approved for intermittent leave and was therefore not authorized to take leave for a continuous four-week period. *Id*. at ¶ 32. Ms. Jernigan

asked Mr. Clary to submit additional documentation before his leave request could be approved. *Id*. Mr. Clary responded that the certification form he submitted did not specify the amount of leave he was seeking, and instead addressed leave to provide "care as necessary." *Id*. at ¶ 33.

During this conversation, Mr. Clary claims that Ms. Jernigan responded in a "hostile and flippant manner," and told him "if he wanted to keep his job he should go back to work." *Id*. at ¶ 36. Mr. Clary then requested that Ms. Jernigan send him the certification paperwork to obtain approval to take FMLA leave for a continuous period of four weeks. *Id*. at ¶ 37. Ms. Jernigan agreed to send the paperwork. *Id*. Mr. Clary claims that Ms. Jernigan failed to send him the paperwork necessary to obtain leave and did not provide additional information on how to receive approval for his request. *Id*. at ¶ 38.

After this discussion with Ms. Jernigan, Mr. Clary attempted to return to work by calling Sgt. McKittrick and Lt. Bethea. *Id*. at ¶ 39, 40. On August 24, 2017, Mr. Clary allegedly spoke to Lt. Bethea, who advised Mr. Clary to contact Capt. Washington about his return. *Id*. at ¶ 41. Mr. Clary then spoke with Capt. Washington who asked him to submit a written request for approval to Mr. Raville, a request with which Mr. Clary alleges he complied. *Id*. at ¶ 42.

On September 2, 2021, Mr. Clary received a termination letter from Ms. Gardner. *Id*. at ¶ 45. The letter explained that during the verification process of his leave request, Paragon discovered he was being "less than truthful" with Ms. Jernigan when he was asked to provide the medical certification information. *Id*. Particularly, Mr. Clary was informed that his father's health care provider had indicated that his father did not have any appointments scheduled during the time that Mr. Clary requested leave, and that Mr. Clary was not present at the nursing home as he had claimed. *Id*.

On September 5, 2017, Mr. Clary returned his equipment to his former worksite and confronted Mr. Raville and Ms. Denton about his termination. *Id*. at ¶ 51. They both informed Mr. Clary that they were unaware that he had been approved or had even applied to take FMLA leave. *Id.* at ¶ 53.

Mr. Clary then filed suit asserting two causes of action:  Count One alleges interference with his rights under the FMLA; and Count Two alleges retaliation in violation of the FMLA. *Id*. Both claims relate to Plaintiff's employment with Paragon and involve current and former Paragon employees. *Id*. at ¶ 66-83.

Defendants filed a motion to dismiss claiming that Plaintiff's claims are time-barred under the FMLA's two-year statute of limitations, and Counts One and Two against individual defendants Ms. Denton and Ms. Jernigan fail to allege that they had sufficient responsibility to warrant the imposition of individual liability under the FMLA. Mot. Mem., ECF No. 13-1.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

## DISCUSSSION

### I.     Willfulness under FLMA Statute of Limitations

Under the FMLA, most claims are required to be filed no later than two years after the date of the last alleged violation. 29 U.S.C. § 2617 (1). However, if a violation is "willful," the action may be brought within three years of the alleged violation. 29 U.S.C. § 2617 (2). Although the FMLA is silent regarding the definition of willful, this Court has held that a willful violation occurs when an employer knew or showed reckless disregard regarding whether its conduct was prohibited by the requirements of the FMLA. *See Bosse v. Baltimore Cnty.*, 692 F. Supp 2d 574, 583 (D. Md. 2010).

Courts in this circuit have applied a general pleading standard to allegations of willful interference and retaliation under the FMLA. *See, e.g., Settle v. S.W. Rodgers, Co.*, 998 F. Supp. 657, 664 (E.D. Va. 1998), *aff'd*, 182 F.3d 909 (4th Cir. 1999). Additionally, this Court has held that "[w]hen a plaintiff sufficiently alleges facts supporting the claimed violation of the FMLA, a general averment as to willfulness should be sufficient to trigger the three-year limitations period." *Honeycutt v. Balt. Cnty., Md. ("Honeycutt I")*, Civil No. JFM-06-0958, 2006 WL 1892275, at *2 (D. Md. July 7, 2006) (citations omitted). *See also Moore v. Wash. Hosp. Ctr.*, Civ. No. DKC-11-3742, 2-12 WL 2915165, at *3 (D. Md. July 16, 2012) (recognizing that courts in the District of

Maryland have applied a three-year statute of limitations where plaintiffs have made a "general averment as to willfulness.").

Here, Mr. Clary made general averments of willfulness. Mr. Clary pleads facts about the Defendants' mental state, which accepted as true, make his state of mind allegations plausible, including alleging that he specifically requested and ostensibly was approved to use an FMLA-qualifying reason, and that within days of protesting the denial of his leave request he was discharged. Compl. ¶¶ 26-27; 32-52; 71-72; 81-82.

Defendants in their motion to dismiss rely heavily on this Court's decision in *Honeycutt v. Baltimore County*, but in that case, this Court granted *summary judgment* in favor of Baltimore County because it found the record was absent of willfulness on the County's part and therefore the Plaintiff's claims were barred based upon the two-year statute of limitations. Mot. Memo. at 7-8 (citing *Honeycutt v. Balt. Cnty., Md.*, Civil No. JFM-06-0958, 2007 WL 1858691, at *4 (D. Md. June 18, 2007), *aff'd*, 278 F. App'x 292 (4th Cir. 2008)). The procedural differences between *Honeycutt* and this case are significant. In granting the motion for summary judgment, the Court in *Honeycutt* recognized it had previously found that Plaintiff's allegations were sufficient to withstand a motion to dismiss, and from there the parties completed discovery. *Id*. at *3. In its prior decision to deny the Defendant's motion to dismiss, the Court expressly noted that "a general averment as to willfulness should be sufficient to trigger the three-year limitations period." *Honeycutt I*, 2006 WL 1892275, at *2. Because I find that Plaintiff did provide a general averment as to willfulness, at this stage of the litigation, the Defendant's motion to dismiss will be denied and the three-year statute of limitations will apply. Of course, as in *Honeycutt*, after discovery is completed, if the record shows no willfulness on the part of Defendants, the Defendants may seek summary judgment.

II.    **Dismissal of Claims against Nicole Denton and Kameka Jernigan**

In order for an individual defendant to be subject to an FMLA claim as a matter of law, the individual employer must qualify as an "employer" under the FMLA. The FMLA defines an employer as "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(a)(ii)(I). Although the Fourth Circuit has not directly addressed this issue, a number of courts have read this provision to only allow for imposition of individual liability under the FMLA against an employee's supervisor. *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp 582, 598 (D. Md. 2013); *Ward v. Columbia Bank*, No. CV CCB-16-3606, 2018 WL 690883, at *4 (D. Md. Feb. 2, 2018).

This Court has held that, in the private sector, a supervisor must have "sufficient responsibility or stature within the [defendant employer] to warrant the imposition of personal liability under the FMLA." *Caire*, 982 F. Supp at 598. The relevant inquiry is to what extent the supervisor exerted control over the plaintiff's FMLA request. *Id*.

Regarding Ms. Denton, Plaintiff's complaint states that Ms. Denton's job is clerical in nature as she in an assistant to Mr. Raville. Compl. ¶ 5. The complaint continues that Ms. Denton merely "provid[ed] secretarial and clerical support to Raville and the other supervisors… including receiving, memorializing, and forwarding information related to employee absences, FMLA requests, and terminations to Paragon's Human Resources Department." *Id*. Additionally, the complaint includes an allegation that that Ms. Denton's only direct involvement in the matter was that in July of 2017, Mr. Clary sent Ms. Denton and Capt. Washington an email seeking forms to apply for FMLA leave and a statement as to why. *Id*. at ¶ 20.

At no point in the Complaint does Mr. Clary allege that Ms. Denton had any supervisory or responsibility over him, nor does he establish that Ms. Denton had any roles in the FMLA

decision-making process itself other than serving as a possible contact point between the Human Resource Department and the employees. From the facts alleged in the Complaint, even taken in the light most favorable to the Plaintiff, Ms. Denton was no more than a co-worker of Mr. Clary.

Regarding Ms. Jernigan, the complaint refers to her role as an "HR Generalist" who worked under Ms. Gardner. *Id*. at ¶ 28. The Complaint does not allege that she was Mr. Clary's supervisor or had any control or authority over Mr. Clary or the approval of his FMLA request. Although Jernigan did sign Mr. Clary's first FLMA request, courts have found that that is not enough to infer that an individual was an employer under the definition of FMLA. *See Crittendon v. Arai Americas, Inc.*, No. 2:13-CV-567, 2-14 WL 354517, at \*5 (E.D. Va. Jan. 28, 2014) (holding that although an individual signed a memorandum granting Plaintiff FMLA request and prevented Plaintiff from obtaining the benefits, Plaintiff still failed to show that the individual exercised necessary substantial control over Plaintiff's FMLA rights).

Cases in this district, like *Caire*, where the Court denied a Defendant's motion to dismiss as to the individual Defendant, are distinguishable from the case at hand. In *Caire*, the individual Defendant was a member of the executive team, held the title of Director of Human Resources, and reported directly to the CEO of the company. 982 F. Supp at 598. However, here, Ms. Jernigan was an "HR Generalist" who corresponded with Mr. Clary as part of Paragon's FMLA approval process. Compl. ¶ 28.

Therefore, the FMLA claims against the individual defendants Nicole Denton and Kameka Jernigan will be dismissed.

## CONCLUSION

In sum, Defendant's Motion to Dismiss is granted in part and denied in part. Plaintiff's FMLA claims are not time-barred by the statutes of limitation as Plaintiff sufficiently stated a

general averment as to willfulness at this stage of litigation. However, the FMLA claims against individual Defendants, Nicole Denton and Kameka Jernigan, are dismissed as neither individual is alleged to have had a supervisory or substantial enough role in the granting of Mr. Clary's FMLA leave or request.

## ORDER

According, it is this 14th day of September, 2021, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Defendants' Motion for Dismissal of Plaintiff's Complaint (ECF No. 13) is GRANTED IN PART and DENIED IN PART;

    a. Defendants' motion is GRANTED with regard to Plaintiff's claims against individual Defendants Nicole Denton and Kemeka Jernigan. Nicole Denton and Kemeka Jernigan are DISMISSED WITHOUT PREJUDICE;

    b. Defendants' motion is DENIED with regard to limitations, and the case shall proceed against the remaining Defendants;

2. Defendants' Answer to Plaintiff's Complaint is due on or before September 27, 2021.


_____/S/_____
Paul W. Grimm
United States District Judge